# H. REYNOLDS ET AL., EXRS., v. M. CRIDGE.

131    189
203    ⁴ 93

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1889—Decided January 6, 1890.

1. In a suit brought for the conversion of railroad bonds, purchased by plaintiffs subject to a pledge of them to the defendant as collateral security, evidence is admissible of expenses incurred by defendant in saving to the collaterals a large part if not their whole value, at the time of the conversion alleged.

2. A reasonable apprehension of danger may be sufficient to justify a trustee in incurring expenses to preserve the trust property, though it turn out that the danger was not actual; the validity of the charge for such expenditure to be determined by the circumstances as they appeared at the time.

3. It is also competent for the defendant to adduce testimony tending to show that the plaintiffs, before the alleged conversion, when asked to aid him in the protection of the bonds, told the defendant that they con-

Statement of Facts.

sidered them worthless and refused the request, as some evidence of an abandonment of their interest in them.

4. Merely leaving the pledged collaterals in the hands of the defendant, however, with no offer to redeem, but also with no demand by the defendant for payment of the debt secured, is not of itself enough to justify the submission of the question of abandonment to the jury.

5. When a specification alleges error in overruling an objection to the offer of an exhibit in evidence, urged on account of the non-production of the original, and neither the paper itself, nor the evidence on which it was admitted as a copy, is set out, it will be treated as abandoned.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 203 October Term 1889, Sup. Ct.; court below, No. 292 June Term 1887, C. P. No. 1.

On May 2, 1887, Hannah Reynolds and William Walton, executors of Samuel Reynolds, deceased, brought case against Matthew Cridge. Issue. At the trial on April 25, 1889, testimony was introduced upon which it was claimed by the plaintiff:

That in 1873 the defendant was president of the Lawrenceville & Evergreen Passenger Railway Company, and loaned to it $7,000, receiving as collateral security therefor bonds of the company owned by certain stockholders to the amount of $6,250, and also bonds of the company to himself to the amount of $3,750,—in all $10,000; that in May, 1874, the railway was sold at judicial sale for $9,000, subject to the mortgage securing its bonds, and in the same year, Henry D. Leitz, the trustee in the mortgage and a son-in-law of Samuel Reynolds, the plaintiff's testator, bought from the stockholders owning them the $6,250 of bonds pledged to the defendant and in his hands, of which purchase the defendant had notice; that out of the proceeds of the judicial sale of the railway, the defendant, in November, 1876, was awarded and paid $2,424.80, on account of his $7,000 loaned to the company; that after the judicial sale the company was reorganized as the Evergreen Passenger Railway Co., but the defendant had no connection with the new company until in 1879, when, Henry D. Leitz having died, the defendant was appointed by the Court of Common Pleas No. 1 his successor as the mortgage trustee; that in 1880

the road was much injured by a flood, and it required a large amount of money to repair and put it in order, one half of which was supplied by the defendant, he receiving in consideration therefor the one half of all the then stock, to wit, 250 shares; that in 1881, the then stockholders sold the entire concern to A. G. Hatry, for $30,000, delivering to the latter all its property and stock; that of this purchase money, the defendant received $15,000, and delivered to Hatry all the bonds he had, including the $6,250, owned by the plaintiff's testator; that this conversion of the bonds, as alleged, was not discovered by the plaintiffs until 1887, when this suit was brought.

In the defendant's case, the defendant was called in his own behalf, when the following offers were made :

Counsel for the defendant proposes to show by the witness that at No. 488 April Term 1877, an action was brought against the Lawrenceville & Evergreen Railway Co., on a contractor's claim, being a scire facias to enforce claim under the resolution of 1842; and that the witness being apprehensive that an execution upon that judgment would divest the lien of the bonds and mortgage in question here, being informed that Samuel Reynolds claimed an interest in those bonds, went to see Mr. Reynolds' executors, in order that they might, with him, protect the securities as against this claim; that he was told that they considered the bonds of no account and that they would put no money up to protect them; and that after such action on the part of the executors the witness employed counsel to protect the securities against the claim, and paid the fees and finally paid the claim itself : this for the purpose, first, of establishing the right of the witness to a charge upon the securities for the amount of that expenditure, and secondly, for the purpose of showing an abandonment on the part of plaintiffs of any interest in the securities in question.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[2]

Counsel for defendant proposes to prove by the witness that in the year 1880, a flood having washed away the tracks, road bed, and appurtenances of the Lawrenceville & Evergreen Railway Co., the same was left in such condition as to be worth considerably less than the amount of the bonds and mortgage in question; and that the witness, for the preservation of the

securities expended a large sum of money, to wit, the sum of about $5,500, in restoring the different portions of the road to their places and in rebuilding the road; this for the purpose of showing the amount by way of recoupment against any claim of the plaintiffs in this case; to be followed by evidence in support of this offer that any value the securities in question had, or the road had, at the time of the agreement of April 11, 1881, with Hatry, was by reason of this expenditure of money.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[3]

At the close of the testimony, the court, STOWE, P. J., answered certain points presented as follows :

The defendant requests the court to charge :

2. That if the jury find that in December, 1874, Samuel Reynolds became the owner of the bonds in question, in this case, subject to the claim and interest of Matthew Cridge therein and thereon, and that during his lifetime he did not at any time tender or offer to pay the debt due Cridge, for which they were pledged, or give said Cridge any notice of his interest in said bonds, or assert in any way any interest or claim therein; and that after his death his executors never offered to pay said Cridge said debt, or demanded said bonds; and that after the washing away of the railway in 1880 they still made no tender to said Cridge of the debt due to him, then the jury may presume an abandonment or relinquishment on the part of the plaintiffs and their testator of any interest in the bonds in question, and on that presumption find for the defendant.

Answer: Refused.[4]

3. That the debt to Cridge for which the bonds in question were pledged became due and payable in 1874; and if the jury find that neither the plaintiffs nor their testator made any offer or attempt to redeem the pledge, during nearly seven years thereafter, then plaintiffs cannot recover.

Answer: Refused.[5]

4. That the debt to Cridge, for which the bonds in question were pledged, became due and payable in 1874; and if the jury find that neither the plaintiffs nor their testator ever made

any offer or attempt to redeem the pledge, and brought this suit, in 1887, without such offer or attempt to redeem, and without any demand for said bonds, then the plaintiffs cannot recover; they cannot escape the consequences of their own laches, because it now turns out that Cridge parted with the bonds in April, 1881.

Answer: Refused.[6]

The jury returned a verdict in favor of the plaintiffs for $7,284.32. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal specifying that the court erred, inter alia:

1. "In overruling defendant's objection to the following offer of evidence on the part of the plaintiffs, to wit: Plaintiffs' counsel offer exhibit No. 6 in evidence. Objected to, as incompetent and irrelevant, the non-production of the original not being sufficiently accounted for. Objection overruled; bill sealed for defendant.    E. H. STOWE, P. J., [Seal.]"

2, 3. The refusal of defendant's offers.[2][3]

4–6. The answers to defendant's points.[4 to 6]

*Mr. John S. Ferguson* (with him *Mr. Henry A. Davis*), for the appellant.

Counsel cited: Schouler on Exrs., § 313; Ripley v. Sampson, 10 Pick. 373; Waterman v. Brown, 31 Pa. 163; Colebrook on Col. Sec., §§ 343, 344; Adams v. Sturges, 55 Ill. 468; Hayward v. National Bank, 96 U. S. 600; McCalla v. Clark, 55 Ga. 53; Holliday v. Holgate, L. R. 3 Exch. 299; Johnston v. Steer, 15 C. B., N. S., 330; Day v. Holmes, 103 Mass. 306; Heath v. Griswold, 18 Blatch. 555; Talmadge v. National Bank, 91 N. Y. 531.

*Mr. A. Blakeley* (with him *Mr. A. M. Blakeley*), for the appellees.

OPINION, MR. JUSTICE MITCHELL:

The first assignment of error not being according to rule, neither the paper itself, nor the evidence on which it was admitted as a copy, being set out, we must treat it as abandoned.

The offers in the second and third assignments were cer-

tainly relevant on the subject of the expenses incurred by defendant in saving to the collaterals a large part if not the whole value they had at the time of the alleged conversion. It appears from all the evidence, and especially that of Judge Magee, that the road was generally considered worthless, and that the amount realized for its stock and property in 1881 was largely, if not entirely, based on the reconstruction, by means of defendant's advances, after the flood of 1880. It would seem apparent that the value of plaintiffs' bonds must have been enhanced by the same cause, and plaintiffs should in equity contribute their ratable proportion to the expenditure which produced such result. Whether the costs of defending against the contractor's claim in the suit of April, 1877, were a proper charge against the bonds is not so clear, as we do not understand the offer in the second assignment to be to show that a sale under a judgment in that suit would in fact divest the lien of the mortgage and bonds, but only that there was ground to apprehend that it would do so. The witness was certainly not competent to prove by parol the object or the legal effect of that suit, but a reasonable apprehension of danger may be sufficient to justify a trustee in incurring expenses to preserve the trust property, though it turn out that the danger was not actual. The validity of the charge for such expenditure must be determined by the circumstances as they appeared at the time, and these the defendant was entitled to show.

The offer in the second assignment was also relevant and competent on the question of the abandonment of plaintiffs' interest in the bonds. That an executor may abandon property pledged, or subject to assessment, if there is no value over the debt or the assessment to be preserved for the estate, was ruled by Chief Justice SHAW in Ripley v. Sampson, 10 Pick. 373. Such result or intention will not be lighty inferred, but the offer was of testimony tending to support it, and should have been received.

The fourth, fifth, and sixth assignments are not sustained. Merely leaving a pledge in the hands of the pledgee with no offer to redeem, but also with no demand by the creditor for payment, is not of itself enough to justify submitting the question of abandonment to a jury. Nor is the lapse of time

a bar to the plaintiffs, in the absence of circumstances of equit-able estoppel, such as existed in Waterman v. Brown, 31 Pa. 163, and the cases cited from 55 Ill. 468, Adams v. Sturges; and 96 U. S. 611, Hayward v. National Bank. The other assignments do not seem to require particular notice.

Judgment reversed, and venire de novo awarded.